**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **VERNON WHITE,** | : | **CIVIL NO. 1:CV-10-0146** |
| **Plaintiff,** | : | |
| | : | **(Chief Judge Kane)** |
| **v.** | : | |
| | : | |
| **B. A. BLEDSOE, et al.,** | : | |
| **Defendants** | : | |

**<u>MEMORANDUM</u>**

This <u>Bivens</u>-styled civil rights action pursuant to 28 U.S.C. § 1331 was filed by Vernon

White ("White"), at the time an inmate confined at the United States Penitentiary at Lewisburg

("USP-Lewisburg"), Pennsylvania.[1]  The matter proceeds on an amended complaint filed on

May 10, 2010.  (Doc. No. 15.)  Named as Defendants are four employees of the Federal Bureau

of Prisons ("BOP").  Three of the Defendants are employees at USP-Lewisburg:  B.A. Bledsoe,

Warden; L. Karpen, Chief Psychologist; and R. Hicks, Safety Administrator.  The fourth

Defendant appears to be Harrell Watts, National Inmate Appeals Administrator.  Presently

pending is Defendants' motion to dismiss or, in the alternative, for summary judgment.  (Doc.

No. 22.)  For the reasons that follow, the motion will be deemed unopposed and granted.

**I.    Allegations in Complaint**

White alleges that on August 10, 2009, he filed an appeal with respect to his placement in

the Special Management Unit ("SMU") Program at USP-Lewisburg.  On or about September 16,

2009, he received notification that an extension if time was granted to the prison officials with

respect to the time limitation on responding to his appeal.  He maintains that the grant of such

---

[1]   See <u>Bivens v. Six Unknown Named Agents of Fed. Bur. of Narcotics</u>, 403 U.S. 388
(1971).

extension was a denial of his right to due process.

White states that he only expects to be in the SMU under a year, but claims that his personal property is limited to six (6) family photos and ten (10) letters, and argues that he is only permitted sixty (60) minutes a month on the phone.  He also claims that he was subjected to roaches for a five (5) month period beginning on August 10, 2009 when  he arrived at USP-Lewisburg, and also experienced a mouse in his mattress.  Although he states he was moved to a different block at the end of January 2010, he believes it contains asbestos. (Doc. No. 15, Am. Compl. at 4-5.)  White claims that Defendants Hicks and Bledsoe knew of these conditions and therefore were deliberately indifferent to his health and safety in violation of the Eighth Amendment.

 White also alleges that due to his placement in the SMU he was not afforded adequate time to speak with Mental Health Services.  He claims that the "Head of Mental Health Department" has shown deliberate indifference by not giving him the services he needs for a long, prior mental health issue.  As relief, he seeks compensatory damages.

## II.    Procedural History

On May 12, 2010, the Court issued an order directing service of the amended complaint upon the Defendants.  (Doc. No. 16.)  Following the grant of an extension of time, Defendants filed the pending motion to dismiss or, in the alternative, for summary judgment on September 10, 2010. (Doc. No. 22.)  On September 23, 2010, a brief, statement of material facts and exhibits in support of the motion were submitted.  (Doc. Nos. 23, 24.)  Following White's failure to respond to the motion, or request an enlargement of time within which to do so, the Court issued an order on October 15, 2010, directing him to file his opposition to Defendants' motion

within fourteen (14) days.  He was warned that his failure to do so may result in the motion being deemed unopposed or the case being dismissed for failure to prosecute.  (Doc. No. 25.)  At the time, White was still confined at USP-Lewisburg.  Despite the Court's order, he failed to file his opposition brief or seek an enlargement of time within which to do so.  In fact, the last time the Court received contact from Plaintiff was on May 10, 2010, when he filed his amended complaint in this action.[2]

## III.    Standard

Because documents outside the pleadings have been presented by Defendants and will be considered by the Court, the motion will be addressed as one for summary judgment.[3]  Federal Rule of Civil Procedure 56(a) provides that the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.[4]  A fact is "material" if it will "affect the outcome of the suit

---

[2]  In searching White's name through the Inmate Locator on the official website of the Bureau of Prisons, White is listed as "Escaped" and his whereabouts are referred to as "Unknown."  See www.bop.gov.  Through a subsequent phone call made to officials at USP-Lewisburg, the Court learned that White had been furloughed to a halfway house in California on March 24, 2011.  When he failed to return to the halfway house on April 10, 2011, he was placed on "Escape Status."

[3]  There is no need to give White notice that the motion will be addressed as one for summary judgment in that Defendants' labeled their motion as one to dismiss or for summary judgment and attached their statement of undisputed facts and supporting documents.  Further, when the Court issued the order of October 15, 2010 directing White to file his opposition to Defendants' motion, he was further alerted to the fact that the motion was one to dismiss or for summary judgment.  (Doc. No. 25.)

[4]  Amendments to the Federal Rules of Civil Procedure became effective on December 1, 2010.  The oft-cited summary judgment standard is now located in Rule 56(a) rather than Rule 56(c).  Although the wording of the standard has changed slightly, replacing the word "issue" with "dispute" ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact"), this change does not affect the substantive standard or the applicability of prior decisions construing the standard.  Fed. R. Civ. P. 56(a) advisory

under the governing law .... " <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 250 (1986).  A

dispute is "genuine" if it could lead a "reasonable jury [to] return a verdict for the nonmoving

party."  <u>Id</u>. at 250.

When deciding the existence of a genuine dispute of material fact, a court's role is not to

weigh the evidence.  All reasonable inferences are also to be resolved in favor of the moving

party.  <u>Meyer v. Riegel Products Corp.</u>, 720 F.2d 303, 307 n. 2 (3d Cir. 1983).   However, "a

mere scintilla of evidence,"  without more, will not give rise to a genuine dispute for trial.

<u>Anderson</u>, 477 U.S. at 249.  In the face of such evidence, summary judgment is still appropriate

"where the record ... could not lead a rational trier of fact to find for the nonmoving party ...."

<u>Matsushita Elec. Industrial Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586-87 (1986).  "Summary

judgment motions thus require judges to 'assess how one-sided evidence is, or what a fair-

minded jury could reasonably decide.'"  <u>Williams v. Borough of West Chester, Pa.</u>, 891 F.2d 458,

460 (3d Cir. 1989)(quoting <u>Anderson</u>, 477 U.S. at 265).

The movant "always bears the initial responsibility of informing the court of the basis for

its motion, and identifying those portions of 'the pleadings, depositions, answers to

interrogatories and admissions on file, together with the affidavits, if any,' which it believes

demonstrate the absence of a genuine issue of material fact."  <u>Celotex Corp. v. Catrett</u>, 477 U.S.

317, 323 (1986)(quoting Fed. R. Civ. P. 56(c)).  Then, "when a properly supported motion for

summary judgment [has been] made, the adverse party 'must set forth specific facts showing that

there is a genuine issue for trial.'"  <u>Anderson</u>, 477 U.S. at 250 (quoting Fed. R. Civ. P. 56(e)).

The non-movant "must point to concrete evidence in the record" in that mere allegations,

---

committee's note (emphasis added).

conclusions, conjecture, and speculation will not defeat summary judgment.  <u>Orsatti v. New</u>

<u>Jersey State Police</u>, 71 F.3d 480, 484 (3d Cir. 1995).

**IV.     Undisputed Facts**

Along with their motion for summary judgment Defendants submitted a statement of

undisputed facts and documents in support thereof.  (Doc. Nos. 24, 24-2.)  Because White has

failed to file a statement of material facts in opposition to Defendants' submission, the facts as

set forth in Defendants' statement will be deemed admitted pursuant to M.D. Pa. Local Rule

56.1.  The undisputed facts are as follows.

The SMU at USP-Lewisburg began accepting inmates in September of 2002.  (Doc. No.

24-2, Ex. A, Cunningham Decl., ¶ 1.)  From September 2002 until the Spring of 2009, the SMU

was confined to one unit housing approximately 80 inmates.  (<u>Id</u>. ¶ 7.)  The idea behind the SMU

was to provide additional programming opportunities to inmates who may have been involved in

or played a leadership role in a disruptive incident involving some type of gang activity, or who

have a significant disciplinary history and who have chronically not been able to f unction in the

general population.  (<u>Id</u>. ¶ 8.)   The SMU program is a multi-phase approach designed to teach

inmates self-discipline, pro-social values and the ability to successfully coexist with members of

other geographical, cultural and religious backgrounds.  (<u>Id</u>. ¶ 9.)  The program ordinarily takes

18-24 months to complete.

In the Fall of 2008, the BOP announced plans to change USP-Lewisburg's mission from

an ordinary penitentiary to become a more controlled, restrictive institution that will house

inmates who have been difficult to manage in other institutions.  (<u>Id</u>. ¶ 10.)  Prior to the

expansion of the SMU, the BOP issued Program Statement 5217.01, Special Management Units,

which became effective on November 19, 2008.  (Doc. No. 24-2, Ex. 2, Program Statement

5217.01.)  According to the PS 5217.01, SMU designation is non-punitive, and may be

appropriate for any inmate who has, inter alia, participated in a disruptive geographical

group/gang-related activity, had a leadership role in disruptive geographical group/gang-related

activity, or has a history of serious and/or disruptive disciplinary infractions.  (Id. at 1-2.)   With

respect to the conditions of confinement in the SMU, PS 5217.01 states as follows:

> Conditions of confinement for SMU inmates will be more
> restrictive than for general population inmates.  An inmate's
> individual conditions will be limited in accordance with this policy
> as necessary to ensure the safety of others, to protect the security
> and orderly operation of the institution, or protection of the public.
> Individual conditions may be further limited as part of a
> disciplinary sanction imposed pursuant to 28 C.F.R. part 541, . . . .
> Individual conditions are ordinarily made less restrictive when an
> inmate progresses from level-to-level of the SMU program.

(Id. at 5.)

With respect to inmates like White that have been referred for SMU participation after

the November 19, 2008, effective date, PS 5217.01 sets forth the following:

    a.    referral by the unit team to the warden;

    b.    a hearing into whether the inmate meets criteria for SMU
          designation;

          i.    24-hour advanced pre-hearing notice;
          ii.   An opportunity for the inmate to appear at
                the hearing, make an oral statement and
                present documentary evidence and written
                witness statements;

    c.    post-hearing findings and decision; and,

    d.    post-decision notice and appeal.

(Id. at 2-4.)

6

White was referred to the SMU while incarcerated at the United States Penitentiary in Victorville, California, based on his disciplinary history.  He received his referral hearing on May 21, 2009.  (Doc No. 24-2, Ex. 1 at 7-11, Hearing Administrator's Report on Referral for Designation to a Special Management Unit.)  White appeared at the hearing via telephone-conference and made an oral statement.  (Id. at 7. )  He did not provide any documentation or witness statement for the Hearing Administrator to consider.  (Id. at 8.)

In his report, the Hearing Administrator found that White met the following criteria for SMU designation: (1) "The inmate has a history of serious and disruptive disciplinary infractions" and (2) "The inmate otherwise participated in or was associated with activity such that greater management of the inmate's interaction with other persons is necessary to ensure the safety, security, or orderly operation of Bureau facilities, or protection of the public."  (Id. at 8.) In explaining his findings, the Hearing Administrator noted that White had engaged in various serious disciplinary offenses including multiple instances of possession of weapons and assault, as well as other various moderate offenses such as refusing orders and insolence.  (Id. at 9.)The report was completed and signed on June 1, 2009.  (Id.)

On June 8, 2009, based on the Hearing Administrator's report, the BOP's Western Regional Director recommended that White be designated to a SMU.  (Id. at 10.)  The Regional Director's recommendation was approved by the BOP's Designations and Sentence Computation Center on July 7, 2009.  (Id.)  On September 2, 2009, White received a copy of the report and final decision.  (Id.)  The report further informed White of his opportunity to appeal the findings and decision through the Administrative Remedy Program.  (Id. at 10, ¶ 5.)

The BOP's Administrative Remedy Program is typically a three-level process through

which an inmate may seek formal review of a complaint related to any aspect of his confinement if less formal procedures have not resolved the problem.  (Doc. No. 24-2, Ex. 1 ¶ 2, <u>see</u> <u>also</u> 28 C.F.R. §§ 542.10, <u>et</u> <u>seq</u>.)

If informal resolution is unsuccessful, the inmate must first execute the appropriate form to bring the matter to the attention of the warden.  The warden is then to respond to the inmate's complaint within twenty (20) days.   If an inmate is dissatisfied with the warden's response, he may then appeal to the Regional Director within twenty (20) days.  If the Regional Director's response is not satisfactory, the inmate may then appeal to the Office of General Counsel in the BOP's Central Office within thirty (30) days.  (<u>Id</u>., Ex. 1 ¶ 2; <u>see</u> <u>also</u> 28 C.F.R. §§ 542.14-542.18.)  A decision by the BOP is not final, and as such not reviewable, until relief has been denied by the General Counsel's Office.  (<u>Id</u>., Ex. 1 ¶ 2; <u>see</u> <u>also</u> 28 C.F.R. § 542.15.)

An exception to the three-step Administrative Remedy Procedure is set forth in Program Statement 5217.01, Special Management Units.  ( Doc. No. 24-2, Ex. 1 ¶ 3; Ex. 2 ¶ 3(d).) Inmates appealing their referral to the SMU may appeal directly to the Office of General Counsel in the BOP's Central Office.  (<u>Id</u>.)   White utilized this procedure in appealing his designation to the SMU by filing a request with the Central Office on August 10, 2009.  (Doc. No. 24-2, Ex. 1 ¶¶ 5-6 and pp. 5-6, Administrative Remedy Generalized Retrieval.)  The request was denied by the Central Office on November 18, 2009.  (<u>Id</u>.)  Other than the administrative remedy request with respect to his designation to the SMU, White has not filed any other requests for administrative remedy during his incarceration with the BOP.  (<u>Id</u>., Ex. 1 ¶ 6 and pp. 5-6, Administrative Remedy Generalized Retrieval.)

## V.      Discussion

In his amended complaint, White challenges his designation to the SMU at USP-Lewisburg and seems to do so on the basis that the Central Office was granted an extension of time within which to respond to his appeal regarding the designation.  He further alleges that his placement in the SMU violated the Due Process Clause, and also challenges the conditions in the SMU.

A.      **Exhaustion**

With respect to the requirement of exhaustion of administrative remedies, 42 U.S.C. § 1997e(a) provides as follows:

> No action shall be brought with respect to prison conditions under Section 1979 of the Revised Statutes of the United States (42 U.S.C. 1983), or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

Pursuant to 42 U.S.C. § 1997e(a), the exhaustion of available administrative remedies is mandatory.  Booth v. Churner, 532 U.S. 731, 739 (2001).  The "exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  Porter v. Nussle, 534 U.S. 516, 532 (2002).  A prisoner must "exhaust all available administrative remedies" regardless of whether the administrative process may provide the prisoner with the relief that he is seeking.  Nyhuis v. Reno, 204 F.3d 65, 75 (3d Cir. 2000). "[I]t is beyond the power of [any] court ... to excuse compliance with the exhaustion requirement, whether on the ground of futility, inadequacy or any other basis." Id. at 73, citing Weinberger v. Salfi, 422 U.S. 749, 766 (1975).  The PLRA "completely precludes a futility exception to its mandatory exhaustion requirement.  Nyhuis, 204 F.3d at 71.  Thus, prisoners are required to exhaust available administrative

remedies prior to seeking relief pursuant to 42 U.S.C. § 1983 or any other federal law.  Jones v.

Bock, 127 S. Ct. 910, 918-19 (2007).  Nevertheless, "failure to exhaust is an affirmative defense

that must be pled and proven by the defendant."  Brown v. Croak, 312 F.3d 109, 111 (3d Cir.

2002) (citing Ray v. Kertes, 285 F.2d 287, 295 (3d Cir. 2002)).

        The PLRA mandates that a prisoner "properly" exhaust his or her administrative

remedies before commencing suit in federal court.  Woodford v. Ngo, 548 U.S. 81, 126 S. Ct.

2378, 2387  (2006).  "Proper exhaustion demands compliance with an agency's deadlines and

other critical procedural rules because no adjudicative system can function effectively without

imposing some orderly structure on the course of its proceedings."  Id at 2386.  Such

requirements "eliminate unwarranted federal-court interference with the administration of

prisons, and thus seek [ ] to 'affor[d] corrections officials time and opportunity to address

complaints internally before allowing the initiation of a federal case."  Id. at 2387 (quoting

Porter, 534 U.S. at 525.)  Failure to comply with procedural requirements of the applicable

prison's grievance system will result in a procedural default of the claim.  Spruill v. Gillis, 372

F.3d 218, 227-32 (3d Cir. 2004)("[P]rison grievance procedures supply the yardstick for

measuring procedural default.").  Procedural default is a question of law.  Id. at 232.

        Based upon the undisputed facts in this case, it is clear that White has failed to exhaust

the required three-step administrative remedy process  with respect to the conditions of the

SMU.  During his entire BOP confinement, the only administrative remedy filed by White was

with respect to his initial designation to the SMU at USP-Lewisburg.  With respect to said

administrative remedy, it is clear White has fully exhausted on the issue of his designation to the

SMU.  It is equally clear, however, that White failed to exhaust all other issues raised in the

10

amended complaint regarding the SMU including its length, restrictions, and living conditions (rodents, asbestos, medical care).   Thus, with the exception of White's challenge to his designation to the SMU, Defendants are entitled to summary judgment with respect to all remaining claims in the amended complaint on the basis of failure to exhaust administrative remedies.

### B.        Designation to SMU

Defendants concede exhaustion with respect to White's challenge to his designation to the SMU.   However, in reviewing the amended complaint, White mainly challenges the fact that the Central Office was granted an extension of time to respond to his appeal.   Any challenge to the designation on this basis is wholly without merit in that BOP policy as codified at 28 C.F.R. § 542.19 provides for a twenty-day extension of time at the Central Office level, noting that "[i]f the inmate does not receive a response within the time allotted for reply, including extension, the inmate may consider the absence of a response to be a denial at that level."

To the extent White challenges his actual designation to the SMU, the undisputed record reveals that Defendants are also entitled to summary judgment with respect to this claim.   To state a claim under Bivens, the plaintiff must show that the defendant, acting under color of Federal law, deprived him of a right secured by the Constitution or laws of the United States. Brown v. Philip Morris Inc., 250 F.3d 789, 800 (3d Cir. 2001).[5]  Individual liability in a civil rights action is personal in nature, and a defendant is liable only if he was personally, affirmatively involved in the alleged malfeasance.   C.N. v. Ridgewood Bd. of Educ., 430 F.3d

---

[5]  A civil rights claim under Bivens is the federal counterpart to an action brought under 42 U.S.C. § 1983, and the same legal principles governing a § 1983 claim apply to a Bivens claim.  See Brown, 250 F.3d at 800.

159, 173 (3d Cir. 2005).  Further, "[b]ecause vicarious liability is inapplicable to <u>Bivens</u> and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the constitution."  <u>Ashcroft v. Iqbal</u>, ___ U.S. ___, 129 S. Ct. 1937,1948, 173 L. Ed. 2d 868 (2009).  "[A] supervising public official has [no] affirmative constitutional duty to supervise and discipline so as to prevent violations of constitutional rights by his or her subordinates."  <u>Chinchello v. Fenton</u>, 805 F.2d 126, 133 (3d Cir. 1986)(citing <u>Rizzo v. Goode</u>, 423 U.S. 362 (1976)).

In the instant case, all Defendants with the exception of Defendant Watts, are BOP staff members employed at USP-Lewisburg.  Watts is employed by the BOP as the National Inmate Appeals Administration in Washington, DC.  As demonstrated by the documents submitted by Defendants in support of their motion for summary judgment, none of the Defendants had any involvement in White's designation to the SMU at USP-Lewisburg.  White was referred to the SMU while incarcerated at USP-Victorville, California, based on his disciplinary history.  His referral hearing took place there and findings were made by the Hearing Administrator at said facility, as revealed in the Hearing Administrator's report.  (Doc. No. 24-2, Ex. 1 at 7-11.)  The report was thereafter approved by the BOP's Western Regional Director who recommended that White be designated to a SMU.  This recommendation was then approved by the BOP's Designations and Sentence Computation Center.  (<u>Id</u>. at 10.)

To the extent White raises a claim with respect to his designation against Watts because of his involvement in responding to White's administrative remedy appeal with respect to the designation, liability cannot be predicated on the basis of <u>respondeat</u> <u>superior</u>.  <u>See</u> <u>Rode v. Dellarciprete</u>, 845 F.2d 1195, 1207 (3d Cir. 1988)(citations omitted).  Participation in the after-

the-fact review of a grievance or appeal is not enough to establish personal involvement. See

Rode, 845 F.2d at 1208; Brooks v. Beard, 167 F. App'x 923, 925 (3d Cir. 2006). For these

reasons, summary judgment is warranted in favor of all Defendants with respect to White's claim

challenging his designation to the SMU.

The Court notes, however, that even if White had been able to demonstrate personal

involvement on the part of Defendants, his designation to the SMU at USP-Lewisburg did not

violate a protected liberty interest based upon the undisputed facts in the record. First, White has

no right to be confined in any particular prison or to be transferred to any particular prison. See

Olim v. Wakinekona, 461 U.S. 238 (1983); Young v. Quinlan, 960 F.2d 351, 358 n. 16 (3d Cir.

1992); Flanagan v. Shively, 783 F. Supp. 922 (M.D. Pa 1992.) The mere fact that White is not

confined in the general population or does not have access to all of the same privileges as those

inmates in general population does not amount to a constitutional violation. In making the

designation determination, the Hearing Administrator's Report fully documents White's history

of serious and disruptive disciplinary infractions, including multiple instances of possession of

weapons and assault, as well as other offense such as possessing unauthorized items, refusing

orders and insolence. The report supports White's participation in or association with activity

indicating that greater management of his interaction with other persons is necessary to ensure

the safety, security, or orderly operation of BOP facilities. (Doc. No. 24-2, Ex. 1 at 7-11,

Hearing Administrator's Report on Referral for Designation to a Special Management Unit.)

For these reasons, it is clear that even if Defendants had been personally involved with his

designation to the SMU, they would be entitled to summary judgment with respect to the

designation decision. For all of these reasons, Defendants' motion to dismiss or in the

alternative for summary judgment will be granted.  An appropriate order follows.

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **VERNON WHITE,** | : | **CIVIL NO. 1:CV-10-0146** |
| **Plaintiff,** | : | |
| | : | **(Chief Judge Kane)** |
| **v.** | : | |
| | : | |
| **B. A. BLEDSOE, <u>et al</u>.** | : | |
| **Defendants** | : | |

<u>**ORDER**</u>

**AND NOW**, this 8th day of June, 2011, for the reasons set forth in the accompanying

memorandum, **IT IS HEREBY ORDERED AS FOLLOWS:**

1.   Defendants' motion to dismiss or, in the alternative, motion for summary judgment (Doc. No. 22) is **deemed unopposed and is granted**.  Summary judgment is granted in favor of Defendants on all claims.  The Clerk of Court is directed to enter judgment in favor of all Defendants and against Plaintiff.

2.   The Clerk of Court is directed to **close this case**.

3.   Any appeal from this order is deemed frivolous and not in good faith.  <u>See</u> 28 U.S.C. § 1915(a)(3).


 S/ Yvette Kane
YVETTE KANE, Chief Judge
Middle District of Pennsylvania